IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 3:05 CR 786

-vs-

CHRISTOHER TURLEY,                MEMORANDUM OPINION
                                                                     AND    ORDER

                Defendant.

KATZ, J.

On March 15, 2006, the Court conducted a hearing relative to Defendant's motion in limine and request for a Daubert hearing. Specifically, the Defendant seeks to exclude the testimony of the Government's expert, Sanford A. Angelos regarding the method of manufacturing methamphetamine. For the reasons stated below, the Defendant's motion in limine is denied.

**MOTIONS IN LIMINE**

*A. Standard*

Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child and Family Serv.*, 115 F.3d 436, 440 (7th Cir.1997). The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred

until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. (citations omitted).  Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.  The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine.  *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce*, 469 U.S. at 41, 105 S.Ct. at 463) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").  *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400- 1401 (N.D.Ill.1993).

Evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed.R.Evid. 401.  Generally, "[a]ll relevant evidence is admissible," Fed.R.Evid. 402, unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed.R.Evid. 403.

*B.  Expert Testimony Considerations*

The legal standard to be used in *Daubert* challenges was set forth by Judge Bechtle in his memorandum opinion issued on February 1, 2001:

> Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589).  The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.  The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than subjective belief or

speculation. *Id.* at 589-590. Further, Rule 702 requires that expert testimony assist the trier of fact, i.e., it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591-92.

In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id*. at 592-93. Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).

In *Daubert*, the Court identified several factors to assist courts in evaluating whether a scientific theory or methodology constitutes reliable scientific knowledge. These include: whether the theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether a technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or method has general acceptance in the scientific community. *Daubert*, 509 U.S. at 593-94. These factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted." *Heller*, 167 F.3d at 152.

In addition, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." 4 Weinstein's Fed. Evid. § 702.06[1], at 702-52 (2000). In other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue. *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 382b (5th Cir. 1996).

Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury. *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1987); *STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d 740, 768 (D.Md. 1999) (quotation omitted), *aff'd*, No. 99-1540, 2000 WL 564010 (Fed. Cir. May 8, 2000); *Sec. & Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998).

Lastly, the court "should also be mindful of other applicable rules." *Daubert*, 509 U.S. at 595. Federal Rule of Evidence 703 "provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts and data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Id*. (quoting Fed. R. Evid. 703). Under Rule 703, "[i]f the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *In re Paoli RR. Yard PCB Litig.*, 35 F.3d [717,] 748 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985).

*In re: "Diet Drugs (Phenermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *5-6 (E.D. Pa. Feb. 1, 2001) (footnotes omitted). The district court is not required to hold a hearing to address a *Daubert* issue. *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

*C. Testimony of Sanford A. Angelos*

The Defendant seeks to preclude the testimony of Sanford A. Angelos that the items seized are precursors to methamphetamine. Specifically, the Defendant challenges the estimates of "yield" extrapolated from the quantity of ethylbenzene.

The Court heard testimony from Mr. Angelos, who has some thirty years experience with the DEA and is now a consultant. He testified he has participated in clandestine lab investigations for approximately thirty years. He has presented various papers on numerous methodologies on the manufacturing of various drugs and outlined for the Court the various methods of producing methamphetamine in a clandestine laboratory.

Mr. Angelos testified that there are three ways to estimate production capabilities, with those being: (1) actual yield; (2) theoretical yield; and (3) reconstructed yield. Under the theoretical yield, it constitutes a standard chemistry calculation and conversion, taking into account yield and purity. Mr. Angelos' testimony was aimed at a theoretical approach to determine the yield of a methamphetamine laboratory based upon the items seized from the Defendant's property. His testimony demonstrated that under a theoretical approach, as approved by the DEA, it would provide for a one hundred percent conversion, a conclusion supported by scientific journals.

4

Having carefully considered the testimony of Mr. Angelos, Deputy Ackley, and Defendant's expert, Dr. Alfred Staubus, the Court finds that Mr. Angelos' methods and experience comports with the dictates of *Daubert*. The Defendant's challenge to Mr Angelos' assumption goes to the weight of evidence and the relevancy thereof, not to the validity of the testimony based upon *Daubert* standards. As Mr. Angelos' methods were supported by methods generally accepted in the field and upon DEA policy, the Court finds his testimony sufficiently reliable and is admissible under Fed. R. Evid. 702. *See United States v. Cavely,* 318 F.3d 987, 997-997 (10th Cir.), *cert. denied*, 539 U.S. 960 (2003).

### REMAINING ISSUES

Upon consideration of the briefs on the issue of suppression of evidence, Defendant's motion for suppression (Doc. No. 32) is denied. Defendant's motion to modify conditions of release (Doc. No. 85) is denied as moot.

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE